IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>GABRIEL GIGENA,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER DENYING THE GOVERNMENT'S MOTION IN LIMINE TO ADMIT BACKGROUND EVIDENCE AND STATEMENTS OF THE DEFENDANT<br><br>Case No. 2:24-CR-228-TS<br><br>District Judge Ted Stewart |

This matter is before the Court on the government's Motion in Limine to Admit Background Evidence and Statements of the Defendant.[1] For the reasons discussed herein, the Court will deny the Motion without prejudice.

I. BACKGROUND

On July 11, 2024, Defendant Gabriel Gigena was Indicted for one Count of Assault on a Federal Officer, in violation of 18 U.S.C. §§ 111(a)(1), 1114. This charge arises from Defendant's alleged actions when law enforcement sought to take him into custody following issuance of an arrest warrant against him. The events leading to the arrest are the subject of the instant Motion and are summarized below.

During the relevant time, Defendant and his girlfriend, Ashly Roberts, lived in Valley Springs, California with their three-year-old twin daughters. Defendant and Ms. Roberts have been in a relationship for eleven years. According to Defendant, on April 28, 2024, Defendant

---

[1] Docket No. 46.

1

and Roberts had an argument about numerous personal issues, including who should have custody of their daughters in the event they ended their relationship. During the argument, Defendant told Roberts that she would only get custody of the girls "over his dead body."[2]

At some point that night, Defendant began packing some of his belongings into a vehicle. Before he finished packing, Roberts went to bed and, while she slept, Defendant gathered their sleeping daughters, put them in the vehicle, and left their home. Roberts awoke the next morning to find Defendant and her daughters missing. She called Defendant and pleaded with him to bring the girls back, but he refused. Roberts then filed a petition for emergency custody in California, alleging that Defendant was mentally unstable and had taken their children without her consent. The petition was denied. That same day, Defendant contacted a caseworker in California and told them that Roberts was an unfit parent and he took the children out of concern for the children's welfare. He also told the caseworker he was considering taking the children to Utah, where his sister lived. Defendant and Roberts continued to be in contact regarding custody over the following days.

On May 2, 2024, Roberts again applied for emergency custody. In this second petition, she included newly asserted allegations, including that Defendant suffered from schizophrenia and delusions about his racial identity, among other things, which Defendant disputes. The California court granted the second petition and referred the matter to the District Attorney's Office, who Roberts met with the following day. Roberts gave the investigators her account of the argument and ongoing custody dispute. With this information, the California investigators

---

[2] Docket No. 52, at 2.

applied for and were issued a ping warrant to track Defendant's cell phone, which they located in Summit County, Utah. They also obtained an arrest warrant for Defendant.[3]

The California investigators then contacted colleagues in Summit County and relayed to them a version of the situation, which Defendant contends was "untrue, stale, or grossly exaggerated."[4] Based on this information, the Summit County investigators contacted the United States Marshals' Violent Fugitive Apprehension Team ("VFAST") to seek assistance in apprehending Defendant.

VFAST agents located Defendant in Summit County with his daughters. The government asserts that "[b]ased on the nature of Defendant's taking of the children, his history, and his statements of not giving up the children unless it was over his dead body, [VFAST officers] undertook an expeditious approach to arresting him."[5] Officers positioned themselves around a parking lot where they believed Defendant would be with his children. Once Defendant was spotted, two officers followed him and proceeded to tackle him to the ground to make the arrest. The government asserts that, while on the ground, "Defendant placed his arm around [an officer's] neck and employed a lot of force in an apparent attempt to strangle [the officer]."[6] Other officers came to assist and were able to remove Defendant's arm from around the officer's neck. The charge in the Indictment is based on Defendant's alleged actions toward the arresting officer.

---

[3] The warrant was issued prior to charges being filed pursuant to *People v. Ramy*, 545 P.2d 1333 (1976).

[4] Docket No. 52, at 4.

[5] Docket No. 46, at 2.

[6] *Id.*

The government now moves the Court to allow it to introduce "the background information for this case,"[7] including that Defendant took his children from their home in the middle of the night and told his girlfriend she would have custody of them only "over [his] dead body." Defendant opposes the admission of any "background" evidence on the grounds that it is irrelevant to the charge before this Court and unfairly prejudicial.

## II.  DISCUSSION

Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The government argues that the background evidence at issue is not excludable under Rule 404(b) because (1) it is admissible as "intrinsic evidence" and, therefore, not subject to Rule 404(b);[8] and (2) it is admissible under a Rule 404(b) analysis.

"'[O]ther act evidence is intrinsic'—and thus not subject to Rule 404(b)— 'when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.'"[9] Intrinsic evidence is admissible as long as it is relevant[10] and "its probative

---

[7] Docket No. 46, at 4.

[8] *See United States v. Gallegos*, 111 F.4th 1068, 1092 (10th Cir. 2024) ("Intrinsic or res gestae evidence is not subject to Federal Rule of Evidence 404(b)'s prohibition on prior acts evidence.") (internal quotation marks and citation omitted).

[9] *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011) (quoting *Lambert,* 995 F.2d 1006, 1007 (10th Cir. 1993)).

[10] Fed. R. Evid. 402.

value is [not] substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[11]

"Extrinsic evidence, on the other hand, is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense."[12] To be admissible, extrinsic other act evidence must pass a four part test: (1) the evidence must be offered for a proper purpose under Rule 404(b)(2); (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) the court must provide the jury with a proper limiting instruction upon request by a party.[13]

Regardless of whether the background evidence at issue is analyzed as intrinsic or extrinsic evidence, the Court reaches the same conclusion: the background evidence must be excluded because its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time.

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."[14] "So, the Committee Notes to Rule 403 explain, '[u]nfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[15] "In performing the [Rule] 403

---

[11] Fed. R. Evid. 403; *Gallegos*, 111 F.4th at 1092.

[12] *Irving*, 665 F.3d at 1212 (internal quotation marks and citation omitted).

[13] *United States v. Shumway*, 112 F.3d 1413, 1419 (10th Cir. 1997) (citing *Huddleston v. United States*, 485 U.S. 681, 691–92 (1988)).

[14] *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

[15] *Id.* (quoting Advisory Committee's Notes on Fed. Rule Evid. 403).

balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."[16] "'[C]onsideration should [also] be given to the probable effectiveness or lack of effectiveness of a limiting instruction' and '[t]he availability of other means of proof.'"[17]

Considering the charge against Defendant, the probative value of the background evidence at issue is limited. The jury must decide if Defendant is guilty of violating 18 U.S.C. § 111, which provides criminal penalties for "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidate[ing], or interfere[ing]" with a federal officer while the officer "is engaged in or on account of the [officer's] performance of official duties." The evidence of primary importance to the jury's determination will be what occurred during the arrest. Evidence of the circumstances leading to the issuance of the arrest warrant, while relevant for the reasons argued by the government, has minimal probative value.

On the other hand, the Court believes the danger of unfair prejudice to be significant. Should the Court allow the government to introduce the background evidence at issue, it could lead the jury down a rabbit hole of information regarding the underlying custody dispute that is not at issue in this case. Regardless of whether the government refers to Defendant's purported actions leading to his arrest as "kidnapping," the description of him taking his children during the night without Ms. Roberts' consent and stating she would only get custody of them over his dead

---

[16] *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1139 (10th Cir. 2006) (quoting *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000)).

[17] *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018) (quoting Fed. R. Evid. 403 advisory committee note to 1972 proposed rules).

body will be highly prejudicial to Defendant. Defendant asserts that he will be limited in providing the necessary context to defend himself against these allegations.[18] The Court agrees and finds admission of such evidence would be unfairly prejudicial to Defendant.

Further, presentation of evidence surrounding a complicated custody dispute and the related events leading to the arrest warrant would be time consuming, likely to confuse the issues, and likely to evoke an emotional reaction from the jury. If significant time is spent debating these matters to the jury, the Court doubts the effectiveness of a curative instruction to address any unfair prejudice or confusion of the issues. Accordingly, the Court finds that the limited probative value of the background evidence at issue is significantly outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. Based on this analysis, the Court will preclude the government from presenting any evidence regarding the underlying custody dispute, the events leading to Defendant's arrest, and the information known to the VFAST officers at the time they effectuated the arrest.

The Court will, however, revisit this issue if at trial Defendant suggests that either (1) Defendant had no reason to suspect that he would be arrested or (2) the officer's arrest tactics were unreasonably aggressive. The government has asserted that the background evidence of the underlying custody dispute is probative of Defendant's mental state, i.e. his knowledge, motive, intent, and that he could have expected an impending arrest. The Court finds that this evidence, while relevant, has minimal probative value to Defendant's mental state. However, the probative

---

[18] Regarding the context, Defendant alleges that he took his children because he believed Ms. Roberts was an unfit mother, and that Ms. Roberts' allegations supporting the arrest warrant were untrue or exaggerated. He also alleges that he and Ms. Roberts continued their custody discussions over the days following his statement that she would get custody only over his dead body and that the statement was not ever repeated.

7

value would become more significant if Defendant suggests at trial that he did not have any reason to suspect that he would be arrested.

The government has also argued that evidence regarding the VFAST officers' understanding of the purported dangerousness of Defendant is relevant to the jury's perception of the arresting officers and their credibility. Again, the Court finds this evidence, albeit relevant, has minimal probative value. However, if Defendant suggests at trial that the VFAST agents acted unreasonably aggressive in their arrest tactics, the probative value of such evidence would become more significant.

The Court directs the parties to take special care in their opening and closing statements and to instruct their witnesses to avoid disclosing any information that would require the Court to revisit these issues.

### III.  CONCUSION

It is therefore

ORDERED that the government's Motion in Limine to Admit Background Evidence and Statements of the Defendant (Docket No. 46) is DENIED without prejudice.

DATED this 2nd day of April, 2025.

BY THE COURT:

_____
Ted Stewart
United States District Judge
